50 A.3d 61

MAUREEN CASTRIOTTA, PETITIONER–APPELLANT, v. BOARD
OF EDUCATION OF THE TOWNSHIP OF ROXBURY, MORRIS
COUNTY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 28, 2012—Decided August 9, 2012.

Before Judges FUENTES, J.N. HARRIS and HAAS.

*Hassing & DeFilippis, L.L.P.,* attorneys for appellant (*Erik A. Hassing* and *Kevin M. DeFilippis,* on the briefs).

*Adams Stern Gutierrez & Lattiboudere, L.L.C.,* attorneys for respondent Roxbury Township Board of Education (*Philip E. Stern,* of counsel and on the brief).

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent Acting Commissioner of Education (*Christopher Huber,* Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Petitioner Maureen Castriotta, an elected member of the Roxbury Board of Education, appeals from the final decision of the Acting Commissioner of Education denying her request for indemnification of legal fees and costs incurred in connection with defending herself against a censure resolution adopted by the Roxbury Board of Education. The Board passed this resolution despite petitioner's specific objections challenging the Board's: (1) jurisdiction to review her conduct as a fellow member and (2) authority to impose sanctions, including censure.

On appeal, the Acting Commissioner agreed with petitioner and found the Board's actions to be ultra vires because, under the School Ethics Act, *N.J.S.A.* 18A:12–21 to –34, the Legislature vested the School Ethics Commission with exclusive responsibility to enforce the Code of Ethics for School Board Members codified in *N.J.S.A.* 18A:12–24.1. Despite finding in petitioner's favor, the Acting Commissioner denied her application for indemnification and counsel fees under *N.J.S.A.* 18A:12–20. In reaching this determination, the Acting Commissioner adopted, without elaboration, the preliminary decision of the Administrative Law Judge (ALJ) who found that the disciplinary proceeding initiated by the Board against petitioner was not a "legal proceeding" under *N.J.S.A.* 18A:12–20. We disagree and reverse.

The disciplinary action taken by the Board against petitioner began with notice of the charges against her. In this notice, the Board also advised petitioner that she had the right to be represented by counsel, to present witnesses in her favor, and to address the Board directly in her own defense. Before voting to censure petitioner, the Board received the testimony of petitioner's accusers, heard from petitioner herself, and ruled on arguments raised by petitioner's counsel objecting to its authority to sanction petitioner. These are all core judicial functions. Thus, when the Board decided that petitioner had committed an ethical infraction warranting the sanction of censure, it was performing an adjudicatory act and functioning in a quasi-judicial capacity.

This process conformed in all material respects to a due process hearing and constitutes a "legal proceeding" under *N.J.S.A.* 18A:12–20.

I

On April 26, 2010, petitioner learned from news reports that high school students throughout the state were planning to express their dissatisfaction with a proposed reduction in state aid to local school districts by walking out of their classes and gathering outside school buildings. The local demonstration was scheduled to take place on the morning of April 27, 2010. That morning, petitioner received a call from "a concerned community member" inquiring about whether students from Roxbury High School were participating in this statewide protest.

In response, petitioner decided to go to the high school to see for herself if the students were going to participate because Roxbury School Board policy prohibits students from cutting classes, leaving school grounds without permission, or engaging in activities that infringe on the rights of others or interfere with the orderly operation of the educational program. Unbeknownst to petitioner, however, Roxbury Superintendent of Schools Michael Rossi and High School Principal Jeffrey Swanson had decided, in the interest of student safety, to allow the protest to take place as long as it was conducted in an orderly fashion.[1]

On the day of the protest, petitioner arrived at the high school student parking lot at approximately 9:30 in the morning. She

---

[1] In a letter written to the Board dated May 6, 2010, Superintendent Rossi stated that "student leaders" had informed the school administration of "their intentions to participate in this student movement." In Rossi's opinion, this left the administration with "few choices." They could try to stop the students through verbal warnings or physical restraints, or bar the students' access "to [the] outside." In the administration's "professional judgment," none of these options were feasible. They thus "chose to first and foremost keep our students safe, [by] allow[ing] them an opportunity to express their views, get them back to class, and be done with it."

parked her car and walked over to where "several hundred students [2] [were] filing out of the high school's front entrance into the roadway in front of the school." Petitioner saw Principal Swanson watching the students as they exited the school building without making any effort to stop or redirect their movements.

What occurred next between petitioner and the school administrators remains hotly disputed. According to petitioner, she merely approached Principal Swanson and asked him "why the walkout was being allowed to take place." Swanson told her that he could not "accommodate the discipline for the number of students involved in the walkout." She then asked him if he knew about the walkout "ahead of time." Swanson answered "yes." From petitioner's perspective, her conversation with Swanson ended at this point without further incident. Petitioner emphasized that "[a]t no time during my conversation with Mr. Swanson did I raise my voice to him, criticize or berate him, give any directives or seek to involve students in my conversation with him. Moreover, at no time did Mr. Swanson tell me I have to leave the school grounds."

Principal Swanson has a different recollection of this encounter with petitioner:

> Within moments of my arrival outside of the school to supervise the students, I was accosted by a Board of Education member Mrs. Castriotta. She was very accusatory and critical in her tone and in her language to me ... She questioned me on a number of occasions, when did you find out about this? What are your decisions about this? Why aren't you making the students go back? Why aren't you stopping them from doing that and a number of other questions.

Petitioner's encounter with Superintendent Rossi occurred a few minutes after her interaction with Swanson ended. Petitioner had called Rossi at his office earlier that morning when she first discovered that the student protest was going forward. She wanted to know what strategy the Superintendent had developed to deal with the problem. As she watched the students continue

---

[2] According to Superintendent Rossi, approximately six hundred students participated in the protest.

to leave their classes and congregate in front of the high school, she noticed Rossi speaking to Swanson. She called to him, "Mike," to ask him how he planned to respond to the situation. According to petitioner, Rossi responded in a nasty tone: "This is not your business," and the following exchange ensued:

[H]e again turned his head towards me and said, "You are trespassing" again in a very nasty tone. I was upset and incredulous at Dr. Rossi being so antagonistic and confrontational and I told him that I was not trespassing, that I was a school board member, a long time taxpayer and a resident of Roxbury and my children went through the school system. I asked him who he was to tell me that this was not my business and that I was trespassing. Dr. Rossi replied, "I'm the superintendent of schools." I then walked away from Mr. Rossi and Mr. Swanson. I stepped back to the parking lot and then observed Dr. Rossi walk away towards the high school. I never gave Dr. Rossi any directives or sought to involve students in my exchange with him.

As was the case with Swanson, Rossi recalls the event entirely differently. Rossi maintains that petitioner confronted him about allowing the students to violate the Board's attendance policy. She directed him to instruct the students to return to their classes. Rossi claims petitioner was intransigent in her position, ignoring his student-safety concerns about attempting to persuade over six hundred teenagers to return to class under those circumstances. According to Rossi, petitioner "became very volatile" and irate when he told her she was trespassing on school property. Rossi and Swanson both indicated that they saw petitioner walking around the high school building and speaking with students.

The majority of the students returned to class by 10:46 a.m., effectively ending the demonstration. The news accounts of the event included quotes from petitioner expressing her views on the matter, including recommending that Rossi and Swanson be reprimanded for violating the school's attendance and student disciplinary code of conduct.

Petitioner gave the following account of her interactions with the news media:

When I arrived home, I opened an E-mail sent from the [G]overnor's press secretary with a statement that said that students belong in the classroom and we hope all efforts were made to curtail student walkouts. It also included a statement from Department of Education Commissioner Bret Schundler that said,

> "Schools should enforce their attendance policies. They should not be permitting students out of class."
>
> Sometime afterwards, the reporter from the Daily Record who was present at the Roxbury High School walkout called to ask me my opinion of the walkout. I told him as I always do when giving my opinion about school matters that I was speaking on my own behalf and not that [of] the school board. I then stated my opinion as an elected state official about the student walkout because it was a genuine issue of public concern.
>
> This was also the case when I gave my opinion about the student walkout in subsequent interviews with another reporter from the Daily Record and with Fios News. At no time when giving my opinion did I [publicly] state that the administrator should be reprimanded for sanctioning the event and violating policy. I gave my opinion that the school board should review the matter and decide if school policy was violated and disciplinary action was required.

These contrasting accounts of events formed the backdrop for the formal actions taken by the Board thereafter.

## II

On May 6, 2010, Superintendent Rossi sent a letter to the President of the Board "to express [his] outrage at the treatment that [he and Principal Swanson] received on the morning of April 27, 2010 at Roxbury High School at the hands of Board member Maureen Castriotta." Rossi accused petitioner of violating the New Jersey School Administrative Code. Swanson sent a similar letter encouraging the Board to take action against petitioner.

On May 14, 2010, the Board's Secretary/Business Administrator sent petitioner a certified letter captioned: "Notice of Potential Censure." In this letter, the Secretary notified petitioner that he had been directed by "the President of the Board of Education" to advise her that at the May 24, 2010 meeting, "the Board will consider a censure resolution based upon [her] conduct on or about April 27, 2010."

The letter continues, in relevant part, as follows:

> You may request that the discussion concerning possible disciplinary action against you take place in private session by advising the undersigned of your request in writing no later than noon on May 21, 2010. If the matter is to be discussed in executive session, that discussion will begin at 6:30 p.m.
>
> In general *the charges against you relate to your conduct on April 27, 2010 which is detailed in the attached draft censure resolution.* The Board has set aside a

maximum of forty-five (45) minutes for the discussion. *You are permitted to be represented by counsel or a representative of your choosing, to present witnesses on your behalf, and to address the Board directly should you desire.* You should be aware, however, that it is the position of the District that if you choose to be represented by counsel, you will do so at your own expense and that the indemnification statute does not apply in this instance. If you choose to have discussion in executive session, witnesses will be called into the meeting one at a time to address the Board and will be excused after making their statements. It is anticipated that the Superintendent and High School principal will also address the Board.

[ (Emphasis added).]

On May 24, 2010, the Board met to consider the charges against petitioner. Although they were not administered the oath required under *N.J.R.E.* 603, Rossi and Swanson both testified before the Board as to petitioner's alleged conduct on the day of the student protest that formed the basis for the charges against her. Petitioner addressed the Board in response, refuting the allegations against her. After hearing from the parties involved, the Board voted to pass the following resolution:

Roxbury Township Board of Education Resolution of Censure, May 24, 2010.

WHEREAS, Maureen Castriotta is a duly elected Member of the Roxbury Board of Education; and

WHEREAS, Mrs. Castriotta has taken actions which are inconsistent with her obligations as a Board Member and detrimental to the best interests of the Board and the School District; and, specifically,

WHEREAS, on April 27, 2010, a number of Roxbury High School students participated in a peaceful protest in response to State-aid cuts to the District; and

WHEREAS, the District and High School administration were well aware of the planned protest and had conferred and planned a strategy for managing the protest in a way which they had determined would be in the best interests of the students and of the District; and

WHEREAS, on that date, Mrs. Castriotta was found to be on Board of Education property, namely, Roxbury High School grounds, uninvited and unrelated to her duties as a Board of Education member; and

WHEREAS, Mrs. Castriotta did not announce her presence to school administrators, and did not sign in at the Main Office, as required by District procedures; and

WHEREAS, on that date, Mrs. Castriotta approached the demonstrating students and confronted them without authorization from the Superintendent, the Principal, or their designees, and

WHEREAS, *on that date, Mrs. Castriotta criticized and berated the Superintendent and building Principal in public and, raised her voice and attempted to give*

*directives to them while they were engaged in supervisory activities in full view of students and staff, and further sought to involve those students in her dispute with the Superintendent and Principal;* and

WHEREAS, *on that date, Mrs. Castriotta, while outside the school and on school property, approached open classroom and office windows and attempted to address the occupants of those rooms, including but not limited to students, resulting in disruption to the students' educational programs and District operations and upsetting students and staff;* and

WHEREAS, Mrs. Castriotta refused to leave the school grounds despite having been asked to do so, multiple times, by both the Superintendent and building Principal; and

WHEREAS[,] Mrs. Castriotta then made statements to the press which were published in the Daily Record, in which she criticized the District's response to the student protest and stated publicly that the administrators should be reprimanded for allegedly sanctioning the event and violating policy; and

WHEREAS[,] Mrs. Castriotta also allowed herself to be interviewed on Verizon FIOS news, making the same statements made to the Daily Record; and

WHEREAS[,] Mrs. Castriotta, by her conduct, failed to follow District procedures when entering school grounds as a visitor; and

WHEREAS[,] Mrs. Castriotta, by her conduct, acted in a manner which was detrimental to District students, the Superintendent, the High School principal, and the Board of Education as a whole; and,

WHEREAS, Mrs. Castriotta, by her conduct, has exposed the Board of Education to potential legal liability; and

WHEREAS, a majority of the Board wish to express in a public forum their dissatisfaction with Mrs. Castriotta's conduct as aforesaid;

NOW, THEREFORE, be it resolved that the Members of the Roxbury Board of Education do hereby censure fellow Board Member Maureen Castriotta for the aforesaid unbecoming conduct and caution her to avoid such conduct during the balance of her term on the Board; and be it further

RESOLVED that a copy of this Resolution shall be sent to the Commissioner of Education and the Executive County Superintendent.

[ (Emphasis added).]

### III

■ In this appeal, the core question is one of statutory construction. As such, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *Am. Fire & Casualty Co. v. N.J. Div. of Taxation,* 189 *N.J.* 65, 79, 912 *A.*2d 126 (2006) (internal quotation marks and citations omitted). Stated differently, the Acting Commissioner's interpretation of the statute is not binding on this court. *See Ibid.*

Our analysis will be guided by the plain language of the statute. *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009) (citing *Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008)); *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005).

The limited question before us concerns the nature of the proceeding that led to the Board's actions against petitioner. In response to petitioner's challenge, the Acting Commissioner found that the Board did not have the authority to censure petitioner. The Board did not appeal the Acting Commissioner's determination. Petitioner now seeks indemnification for the costs incurred in defending herself against the Board's actions pursuant to *N.J.S.A.* 18A:12–20, titled "Indemnity of members of boards of education against cost of defense," which, in relevant part, provides:

> Whenever a civil, administrative, criminal or quasi-criminal action *or other legal proceeding* has been or shall be brought against any person for any act or omission arising out of and in the course of the performance of his duties as a member of a board of education, and in the case of a criminal or quasi-criminal action such action results in final disposition in favor of such person, the board of education shall defray all costs of defending such action, *including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom.*
>
> [ (Emphasis added).]

In rejecting petitioner's application, the ALJ was not "[ ]persuaded that the Board's censure action constituted a 'legal proceeding' within the intent of *N.J.S.A.* 18A:12–20." The ALJ defined "a legal proceeding" as "one brought in a legal forum, such as before a court or administrative agency." The ALJ found petitioner's argument in this respect disingenuous, noting that:

> The only legal proceeding here was brought by Castriotta herself. Indeed, Castriotta cannot have it both ways—she has contested the process used by the Board to censure her precisely because it was not a proper legal proceeding, with formal discovery and a formal hearing process, as contemplated by the [School Ethics] Act.

The Acting Commissioner adopted the ALJ's preliminary decision without elaboration.

█ In a civil context, the indemnification provided in *N.J.S.A.* 18A:12–20 must be construed liberally to promote a diversity of views on educational issues and policy and encourage members of local boards of education to express their views freely, without fear or intimidation. *Quick v. Bd. of Educ. of Old Bridge*, 308 *N.J.Super.* 338, 342, 705 *A.*2d 1276 (App.Div.1998) (citing *Powers v. Union City Bd. of Educ.*, 124 *N.J.Super.* 590, 597, 308 *A.*2d 71 (Law Div.1973), *aff'd o.b.*, 127 *N.J.Super.* 294, 317 *A.*2d 373 (App.Div.), *certif. denied*, 65 *N.J.* 575, 325 *A.*2d 709 (1974)).

At the time *Quick* was decided in 1998, *N.J.S.A.* 18A:12–20 limited indemnification to "civil or criminal action." *See L.* 1973, *c.* 336, § 1. Effective July 26, 2001, the Legislature amended the statute to expand the scope of coverage by including "civil, administrative, criminal or quasi-criminal action or other legal proceeding." [3] *See L.* 2001, *c.* 178, § 1. The question before us is what constitutes a "legal proceeding."

In *McFeely v. Board of Pension Commissioners*, 1 *N.J.* 212, 216, 62 *A.*2d 686 (1948), the Court addressed the factors used in determining when an administrative agency performs a quasi-judicial function. The Court held that when an agency is "under a duty to consider evidence and apply the law to the facts as found, thus requiring the exercise of discretion or judgment judicial in nature on evidentiary facts, the function is *quasi* judicial and not ministerial." *Ibid. People v. McWilliams.* The Court reaffirmed and refined these principles in *Handlon v. Town of Belleville*, 4 *N.J.* 99, 105, 71 *A.*2d 624 (1950), where it noted:

> The quality of the act rather than the character of the agency exercising the authority is determinative of the nature of the power and the need for procedural due process. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily *quasi* judicial and not ministerial.

---

[3] Although not relevant here, this same amendment made indemnification for exemplary or punitive damages subject to the standards and procedures set forth in *N.J.S.A.* 59:10–4.

Finally, in *Cunningham v. Department of Civil Service,* 69 *N.J.* 13, 22, 350 *A.*2d 58 (1975), the Court addressed the distinction between an agency's legislative and judicial functions.

The crucial questions are whether the fact finding involves a certain person or persons whose rights will be directly affected, and whether the subject matter at issue is susceptible to the receipt of evidence. The nature of the factual inquiries may be dispositive or assist in the disposition of the issue. A question posed in terms of general policy may clearly fall in the "no hearing" category. Facts involved in resolution of a question of that type have sometimes been designated as legislative. Professor Davis distinguishes adjudicative and legislative facts in this manner:

*Adjudicative facts are facts about the parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case.*

[*Ibid.* (Internal citations omitted) (emphasis added).]

■ Applying these principles to the question before us, it is clear to us that the Board was acting in a quasi-judicial capacity when it found petitioner in violation of the local code of conduct. It is not disputed that petitioner was served with "charges" by the Board's agent. That notice also apprised petitioner of her right to be represented by counsel, to present evidence in her own defense, and to address the Board directly. At the meeting to determine whether to censure petitioner, the Board: (1) heard the testimony of the two administrators who had accused petitioner; (2) considered and rejected petitioner's counsel's legal objections; (3) heard petitioner's response to the allegations against her; (4) weighed the evidence presented, including the credibility of the testimony; and (5) found petitioner guilty of conduct unbecoming a member of the Board and sanctioned her accordingly. These are indisputably core judicial functions. The absence of pre-hearing discovery or the lack of the oath required under *N.J.R.E.* 603 may undermine the fairness or integrity of this "legal proceeding," but do not, in any material way, alter its fundamental character.

The decision of the Acting Commissioner denying petitioner indemnification under *N.J.S.A.* 18A:12–20 for the costs she incurred, including counsel fees, in defending against the Board's

censure resolution is reversed. The matter is remanded for the Commissioner, or his designee in the Office of Administrative Law, to determine the award of counsel fees petitioner is entitled to under the factors articulated by the Court in *Walker v. Giuffre*, 209 *N.J.* 124, 35 *A.*3d 1177 (2012), *Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995), and *Rule* 4:42–9.

Reversed and remanded. We do not retain jurisdiction.