**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1748-20

IN THE MATTER OF
LORENZO RICHARDSON,
JERSEY CITY BOARD OF
EDUCATION, HUDSON COUNTY.

_____

Argued March 21, 2022 – Decided July 18, 2022

Before Judges Messano, Rose and Enright.

On appeal from the New Jersey Commissioner of Education, Docket No. 10-12/19A.

Stuart Ball argued the cause for appellant Lorenzo Richardson.

Michal Czarnecki, Deputy Attorney General, argued the cause for respondent New Jersey Commission of Education (Matthew J. Platkin, Acting Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Michal Czarnecki, on the brief).

PER CURIAM

At all relevant times, Lorenzo Richardson was a member of the Jersey City Board of Education (Board). In June 2016, a private citizen, Matthew Schapiro, filed a complaint with the School Ethics Commission (SEC) alleging

Richardson violated provisions of the School Ethics Act (SEA), N.J.S.A. 18A:12-21 to -34, when he filed a petition with the Commissioner of Education (Commissioner) lodging complaints against the Board's president, Vidya Gangadin, and its counsel, Ramon Rivera, accusing them of violating the law. We need not detail the procedural history that ultimately led to the SEC referring the matter to the Office of Administrative Law as a contested case, see N.J.S.A. 52:14B-2 and N.J.S.A. 52:14B-9.

We provide some factual context by referring to our prior opinion in a related matter, Richardson v. Gangadin, No. A-1572-16 (App. Div. June 25, 2018). There, the Jersey City Education Association and other individuals "sought to enjoin the . . . [Board] from renewing the contract of Dr. Marcia V. Lyles as Superintendent of Schools (superintendent)." Id. at 2.

> The contract's term was through June 30, 2016, and included a renewal/non-renewal provision. That provision provided in pertinent part:
>
> > The parties agree that prior to October 31, 2015, the [s]uperintendent shall notify the Board of her desire to extend her employment on the terms offered or upon other terms upon which the parties may agree. The Board agrees that by December 31, 2015[,] it shall notify the [s]uperintendent in writing whether it desires to renew this Agreement for an additional period of time, and of the terms

and conditions proposed for that period. Failure to notify the [s]uperintendent by that date of an intention to renew will mean that an offer of renewal is not being made.

N.J.S.A. 18A:17-20.1 provides for a superintendent's automatic reappointment unless "the [B]oard notifies the superintendent in writing that he will not be reappointed at the end of the current term." The statute provides a formula to determine the deadline by which the Board shall provide such notice, which was undisputed to be 120 days prior to the expiration of the contract.

On December 17, 2015, the Board's attorney advised the Board that notice of non-renewal had to be given to Lyles by December 31, 2015, or her contract would be deemed automatically renewed by operation of N.J.S.A. 18A:17-20.1. Notwithstanding, the Board took no action with regard to the renewal or non-renewal of Lyles' contract prior to March 2, 2016.

. . . The Administrative Law Judge (ALJ) issued an order consolidating the instant matter with a related petition filed by Lorenzo Richardson, which also challenged the renewal of the contract. . . . The ALJ issued an initial decision granting the Board's and Lyles' motions for summary decision and recommending the dismissal of the petition with prejudice. . . . The Commissioner adopted the ALJ's findings and his initial decision dismissing the petition.

[Id. at 3–4 (alterations in original) (emphasis added) (footnote omitted).]

Richardson did not appeal dismissal of the petitions. Id. at 4 n.1. We affirmed the Commissioner's decision, concluding: 1) "the contract of

employment terms may neither substitute nor override the statutorily required written notice"; 2) "it w[as] without dispute the Board did not issue a formal written notice of non-renewal to Lyles within the statutory timeframe"; and 3) "the renewal of Lyles' contract occurred by operation of law." Id. at 7.

Although not initially included in the record on appeal, we requested, and have now received, the February 26, 2016 verified petition Richardson filed with the Commissioner. It appears to be the same petition we referenced in our prior opinion.

In the petition, Richardson explained his frustrated efforts to have the Board specifically vote on the superintendent's contract renewal before the statutory deadline, and he included a draft resolution submitted to the Board to place on its agenda. Richardson cited the incorrect advice given by the Board's attorney regarding the automatic renewal of the superintendent's contract, and Richardson asked the Commissioner to: "convene a special meeting" of "non-conflicted . . . Board . . . members" to vote on the superintendent's contract before March 1, 2016; or, recognize the Board's failure to renew the contract as notification of nonrenewal; or, extend the statutory deadline for the six non-conflicted Board members to vote on whether to renew the superintendent's contract. The petition included numerous attachments.

In this case, the Administrative Law Judge (ALJ) conducted a hearing and considered the testimony from Schapiro, Gangadin, Rivera and Richardson.[1] She cited the minutes of the Board's February 2016 meeting, in which Gangadin "stated that she understood . . . Richardson's frustration." Believing the deadline in the superintendent's contract had already passed, the minutes reflect Gangadin "recommended . . . if there [was] a complaint or if the issue needed to be taken to the next level, her advice was to send it to the Commissioner." The minutes also reflected Richardson advised against sending the issue to the Commissioner.

The ALJ found Richardson nevertheless wrote to the Commissioner on February 22, 2016, "requesting an investigation and immediate action" regarding the superintendent's contract, but neither Gagadin nor Rivera was copied with the letter. M. Kathleen Duncan, a director in the Department of Education, responded by letter dated February 24, advising Richardson "that all appeals before the Commissioner must be made in accordance with . . . N.J.A.C.

---

[1] The ALJ found that shortly after filing his complaint with the SEC, Schapiro became a candidate for the Board but was not elected in November 2016. He ran again and was elected in 2017 on a "slate . . . aligned against the Richardson slate."

6A:3-1.1 et seq."  The letter included further instructions on how Richardson could file a "petition" with the Commissioner.[2]

The ALJ found the issue of the superintendent's contract renewal "was a contentious one," but "Richardson's testimony was not entirely consistent with the documentary evidence, as the record [did] not reflect that Rivera instructed or advised Richardson to file the petition."  The ALJ found there was "some animus between the parties to the petition," and she concluded Richardson attempted to get the issue of the superintendent's contract renewal on the Board's agenda, "convinced that his opinion . . . was correct."  She also found that Rivera advised Richardson at the February Board meeting "that if he appealed to the Commissioner, he would need a majority of the eligible [Board] members to agree.  There was no motion made to allow Richardson to file the petition.  There was no formal vote . . . authorizing Richardson to file the petition."

The ALJ reviewed the SEA's provisions.  She noted that pursuant to N.J.S.A. 18A:12-31, Richardson could have requested and obtained from the

---

[2]  It is unfortunate that a high-ranking member of the Department of Education provided this advice to Richardson, since his letter clearly indicated he was a member of the Board.  Nonetheless, Richardson acknowledged that he took the mandatory training required for all school board members which included instructions on the statutes at issue.  See N.J.S.A. 18:12-33(b); N.J.S.A. 6A:28-4.1(c).

SEC "an advisory opinion as to whether his filing a petition as a [Board] member against the [Board] president and . . . attorney would . . . constitute a violation of the provisions of the [SEA], but he did not make such [a] request." The ALJ determined Richardson violated N.J.S.A. 18A:12-24(g), because as "a school official and board member," Richardson could not "represent any person or party other than the school board or school district in connection with a proceeding involving" the school district, and the petition was a "proceeding" before the Commissioner involving the school district.

The ALJ also concluded Richardson violated N.J.S.A. 18A:12-24.1(e). She found the petition included "accusations" against Gangadin and Rivera that "could damage the public confidence in the [Board] or create a justifiable impression among the public that its trust was being violated. Likewise, [Richardson's] actions interfered with the [Board's] discharge of its duties." The ALJ found Richardson "unilaterally attempted to circumvent the prerogative of the [Board]."

The ALJ also concluded Richardson's conduct was not "overtly unethical or conflicted," but his action was a technical or "per se" violation of the SEA. After considering the totality of the circumstances, the ALJ recommended Richardson be reprimanded.

A-1748-20

Richardson filed exceptions, urging the SEC to adopt the ALJ's factual findings but modify her legal conclusions. The SEC adopted the ALJ's findings and conclusions that Richardson violated N.J.S.A. 18A:12-24(g), and N.J.S.A. 18A:12-24.1(e), but recommended the penalty be increased from a reprimand to a censure.

On January 26, 2021, the Commissioner issued a final decision, which concluded there was sufficient credible evidence that Richardson violated the statute, and Richardson failed to establish the SEC's decision was arbitrary, capricious, or contrary to law. The Commissioner disagreed with the proposed penalty and found a reprimand was appropriate. This appeal followed.

Before us, Richardson argues in a single point that the ALJ, the SEC, and the Commissioner "improperly found 'technical' or 'per se' violations of the [Act]." He contends such conclusions are contrary to the "intent and purpose" of the SEA, which is "to prevent actual conflicts and self-dealing." The Commissioner counters by arguing the plain, unambiguous language of the SEA "contains no such mens rea or intent requirement," and, under the undisputed facts, Richardson violated these statutory provisions.

We have considered the arguments in light of the record and applicable legal principles. We affirm.

A-1748-20

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27–28 (2007).

While "[c]ourts afford an agency 'great deference' in reviewing [the agency's] 'interpretation of statutes within its scope of authority,'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't. of Agric., 196 N.J. 366, 385 (2008)), "[n]onetheless, 'when an agency's decision is based on the "agency's interpretation of a statute or its determination of a strictly legal issue," we are not bound by the agency's interpretation.'" In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (quoting Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)).

In this case, the facts are largely undisputed, and, to the extent they are in dispute, we defer to the Commissioner's fact-finding, which is supported by substantial credible evidence in the record. The appeal presents a purely legal question that requires us to interpret the SEA, in particular, N.J.S.A. 18A:12-

24(g), and N.J.S.A. 18A:12-24.1(e).  Our review, therefore, is de novo.  See, e.g., Castriotta v. Bd. of Educ. of Roxbury, 427 N.J. Super. 592, 600 (2012) (noting when "the core question is one of statutory construction" we do not defer to the agency's interpretation).

"Our primary goal in interpreting a statute 'is to discern and effectuate the intent of the Legislature.'"  Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38 (2020) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)).  We "first consider[] 'the statute's plain language, ascribing to the words used "their ordinary meaning and significance."'"  Ibid. (quoting Murray, 210 N.J. at 592).  "If the plain language leads to a clear and unambiguous result, then [the] interpretative process is over."  Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)).

"With enactment of the SEA, the Legislature declared its intention 'to ensure and preserve public confidence' in local school board members, N.J.S.A. 18A:12-22, by providing local board members with advance guidance on ethical conduct so that such members might conduct their personal affairs appropriately and within the bounds ethically expected."  Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 16 (2008) (citing N.J.S.A. 18A:12-24(j)).  N.J.S.A.

18A:12-24(a) to -24(g) lists seven specific prohibitions applicable to all school officials, including members of boards of education. The Commissioner concluded Richardson violated subsection (g), which provides: "No school official . . . shall represent any person or party other than the school board or school district in connection with any cause, proceeding, application or other matter pending before the school district in which he serves or in any proceeding involving the school district in which he serves . . . ."

The SEA created the SEC, providing it with "the power to issue advisory opinions, receive complaints filed pursuant to [N.J.S.A. 18A:12-29], . . . conduct investigations, hold hearings, and compel the attendance of witnesses and the production of documents as it may deem necessary and relevant to such matter under investigation." N.J.S.A. 18A:12-27 and 28(b).[3] A school board member may confidentially "request and obtain from the [SEC] an advisory opinion as to whether any proposed activity or conduct would in its opinion constitute a violation of the provisions of [the SEA]." N.J.S.A. 18A:12-31. See Quick v. Bd. of Educ. of Old Bridge, 308 N.J. Super. 338, 343 n.4 (App. Div. 1998) ("Under N.J.S.A. 18A:12-31, a board member may request and obtain from the

---

[3] The Department of Education promulgated regulations implementing the powers of the SEC and adopting its procedures. See N.J.A.C. 6A:28-1.1 to -11.1.

[SEC] an advisory opinion as to whether any proposed activity or conduct would constitute a violation of the provisions of the [SEA]."); N.J.A.C. 6A:28-5.2.

N.J.S.A. 18A:12-24.1, enacted several years after the SEA in 2001, is the "Code of Ethics for School Board Members" (Code of Ethics) and consists of ten specific affirmations all school board members commit to "abide by." The Commissioner determined Richardson violated subsection (e), which provides: "I will recognize that authority rests with the board of education and will make no personal promises nor take any private action that may compromise the board."

N.J.A.C. 6A:28-6.4(a) provides that every complaint brought against a school board member for violating the Code of Ethics must meet certain standards. "Factual evidence of a violation of N.J.S.A. 18A:12-24.1(e) shall include evidence that the respondent made personal promises <u>or took action beyond the scope of his or her duties such that, by its nature, had the potential to compromise the board</u>." N.J.A.C. 6A:28-6.4(a)(5) (emphasis added).

Richardson's essential argument is that the SEA was never intended to discipline a school board member who took direct action — in this case, filing a petition with the Commissioner — based on an honest disagreement with the Board of which he was a member and without venal motive or intent. However,

the Commissioner correctly notes that the Legislature did not include such qualifying language in either N.J.S.A. 18A:12-24(g), or N.J.S.A. 18A:12-24.1(e). See Zabilowicz v. Kelsey, 200 N.J. 507, 517 (2009) ("The Legislature knows how to draft a statute to achieve that result when it wishes to do so.").

In Mondsini v. Local Finance Board, we noted the Legislature's use of different language within subsections of the Local Government Ethics Law code of ethics, N.J.S.A. 40A:9-22.1 to -22.25. 458 N.J. Super. 290, 295, 300–02 (App. Div. 2019). In particular, we recognized that some "subsections of the code of ethics require that the public official . . . act with a specific purpose." Id. at 302. Here, however, the Code of Ethics required only Richardson's affirmation "that authority rests with the board of education," and he would not "take any private action that may compromise the board." See N.J.S.A. 18A:12-24.1(e).

In response to the Commissioner's argument that Richardson could have sought an advisory opinion from the SEC before filing the petition, Richardson contends the petition was the "awkward[]" equivalent of such a request. We disagree. The petition accused Gangadin and Rivera of violating "New Jersey's Education laws," and asked the Commissioner to take extraordinary action

A-1748-20

which the Board already decided not to take.[4] We think Richardson's decision to file the petition, therefore, was a "private action" with the potential to "compromise the board" in violation of N.J.S.A. 18A:12-24.1(e). As we see it, the Code of Ethics requires all board members to recognize the authority of the Board to act on all official matters, and it was intended to prohibit individual board members from acting "privately." N.J.S.A. 18A:12-24.1(e).

Whether Richardson violated N.J.S.A. 18A:12-24(g) is a closer question. In relevant part, subsection (g) prohibited Richardson from "represent[ing] any person or party <u>other than the school board</u> . . . in connection with . . . <u>any proceeding involving the school district in which he serves</u>." (emphasis added); See <u>Castriotta</u>, 427 N.J. Super. at 603–04 (holding board member's action before the Commissioner was a "legal proceeding" entitling her to counsel fees incurred in her successful appeal of the school board's censure resolution). Richardson was not representing the Board when he filed the petition that clearly sought the Commissioner's involvement in the future employment of the school district's

---

[4] We recognize, ironically, that contrary to the advice of its attorney, the Board could have complied with N.J.S.A. 18A:17-20.1 and voted to terminate Lyles' contract after December 2015 if it had done so before March 2, 2016. Richardson's petition, among other things, sought the Commissioner's intervention to force a vote on Lyles' retention, one way or the other, during this timeframe.

superintendent. However, there is tension between subsection (g) and N.J.S.A. 18A:12-24(j), which provides: "Nothing shall prohibit any school official . . . from representing himself . . . in . . . proceedings concerning his . . . own interests."

In <u>Kennedy</u>, a school board member and his wife filed due process petitions with the Department of Education for relief on behalf of their son, whose special education needs were allegedly not being met by the board. 196 N.J. at 9. The board, in turn, sought removal of the member, arguing N.J.S.A. 18A:12-2 prohibited his continued membership on the board.[5] <u>Id.</u> at 10–11. The Court attempted to harmonize the broad prohibition in N.J.S.A. 18A:2-2 with N.J.S.A. 18A:12-24(j), stating:

> The reconciliation of the two statutes will unfold based on fact-sensitive analyses for substantial and deeply antagonistic interests that would call into question a board member's ability to perform public duties and the public's confidence in that ability of the member to perform his or her office, notwithstanding the advancement of a personal interest through negotiations or a "proceeding."
>
> . . . .

---

[5] That statute provides: "No member of any board of education shall be interested directly or indirectly in any contract with or claim against the board . . . ." N.J.S.A. 18A:12-2.

We conclude that a board member should not be removed from office merely because he or she has advanced any claim "in a proceeding" against a school district involving that individual or an immediate family member's interest. Substantial, disqualifying conflicts of interest should be identified either by type of claim, i.e., specific monetary claims by the member or a family member as in a tort claim, or by type of proceeding. . . . Ultimately, however, the line between acceptable and prohibited activities by board members, in respect of the advancement of personal or a family member's interests in proceedings against a board of education, may be resolved through the prism of a fact-specific inquiry.

[Id. at 17–18.]

The Court concluded the board member's removal was appropriate, stating, "We cannot reconcile th[e] claim for substantial monetary relief with a board member's continued service on a local board." Id. at 22.

In this case, Richardson's actions do not fit within subsection (j). He was not "representing himself" in pursuit of his "own interests" or that of his family when he filed the petition with the Commissioner. Rather, by his own admissions, Richardson was representing a minority of board members attempting to affect Board policy when they could not do so through the Board itself.

We affirm the final decision of the Commissioner.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1748-20