**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3602-21

MICHAEL SKOWRONSKI,

      Petitioner-Respondent,

v.

BOARD OF EDUCATION
OF THE TOWNSHIP OF
EAST GREENWICH,
GLOUCESTER COUNTY,

      Respondent-Appellant.

_____

Argued December 13, 2023 – Decided January 16, 2024

Before Judges Currier, Firko, and Susswein.

On appeal from the New Jersey Commissioner of Education, Docket No. 92-6/21.

Christopher R. Welgos argued the cause for appellant (Weiner Law Group LLP, attorneys; Stephen J. Edelstein, of counsel and on the briefs; Christopher R. Welgos, on the briefs).

Benjamin W. Spang argued the cause for respondent Michael Skowronski (Dilworth Paxon LLP, attorneys; Benjamin W. Spang, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Commissioner of Education (Laurie L. Fichera, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Board of Education of the Township of East Greenwich, Gloucester County (the Board) appeals from the June 16, 2022 final decision of the Acting New Jersey Commissioner of Education (Acting Commissioner) requiring the Board to indemnify respondent Michael Skowronski for his legal fees and costs incurred in defending an ethics complaint lodged against him by the former superintendent of the Board under N.J.S.A. 18A:12-20. We affirm.

I.

The underlying facts, as initially found by the School Ethics Commission, the Administrative Law Judge (ALJ), and thereafter adopted by the Acting Commissioner, are undisputed. In January 2019, complainant Dr. James J. Lynch served as superintendent of the Board. On January 2, 2019, Skowronski began service as a Board member. On January 15, 2019, the Board and all of its members received a letter sent by email from Lisa Christopher, a teacher employed by the East Greenwich School District and the parent of three children enrolled in the District.

In her letter, Christopher raised concerns about a recent incident at a United Parcel Service (UPS) facility in Logan Township involving an individual with a handgun who held two hostages in the building in a standoff with law enforcement. The suspect was shot by the police after exiting the facility. Christopher's letter inquired about what actions, if any, the Board was taking to ensure everyone's safety and mentioned some schools had been put on "shelter in place" as a precaution. Christopher stated she called the school in the District where her children were in attendance and was told "the school [wasn't] doing anything" in response to the incident and "we were far enough away and not to worry." Christopher expressed her concern to the staff at her children's school and was advised that Dr. Lynch would be informed of her safety concerns.

According to Christopher, Dr. Lynch asked her to meet with him in his office. During the meeting, Christopher claimed Dr. Lynch was "highly offended" that she questioned his authority. Christopher explained in her letter the police officers "were not and are not always present at the entrance of the [school] building" and "should have been" on the day of the shooting. Christopher expressed to Dr. Lynch at their meeting that she was concerned about preschool age children who were dismissed from school at approximately the time the incident occurred without officers present.

A-3602-21

Dr. Lynch told Christopher that "he doesn't question" the officers about their jobs "just like they don't question him about his job." In her letter, Christopher wrote even though she was not the only parent complaining about school safety that day, she felt singled out by Dr. Lynch, "communication was important," and the Board should have emailed the parents and employees in the District to inform them about what was happening that day.

On January 16, 2019, Board President Lyn[1] McGravey responded to Christopher's emailed letter and copied the entire Board. McGravey stated in her email that the Board would "collectively review" and discuss the concerns raised in Christopher's letter. At a regularly scheduled meeting that day, Skowronski moved for an executive session to discuss "[p]ersonnel" and an "employer's communication concerning the [d]istrict's response to the incident at the UPS in Logan Township." Skowronski claimed he was informed that Dr. Lynch was handling the issue. According to Skowronski, he objected during the public session to Dr. Lynch handling Christopher's complaint himself. The public minutes reflect Christopher's concerns were addressed in the executive session.

---

[1] Also referred to as "Evelyn" in the record.

A-3602-21

On January 19, 2019, McGravey sent an email to Christopher and copied the entire Board informing Christopher that the Board discussed the concerns raised in her letter during its executive session:

> After receiving your letter, the Board discussed the points and questions you raised during our executive session held on January 16, 201[9], including, but not limited [to], the actual decision[-]making process, communication, safety protocols and the use of the expertise of the East Greenwich Police Department [EGPD] to assist in making both immediate decisions regarding an incident and short and long term school safety plans and measures. While it is always easier for us to review, analyze, and sometimes second guess a course of action after the fact, the Board concurs that the safety of the students was not in jeopardy on Monday and reliance on the expertise of the EGPD was properly placed. Please know that the Board recognizes and is committed to ensuring the safety of both students and staff is of utmost importance and has empowered the District leadership team to make decisions regarding school safety that protect everyone without causing undue panic.

In response, Christopher sent another letter via email to the Board that same day again raising concerns about her interaction with Lynch and the Board's handling of it. On January 22, 2019, McGravey responded to Christopher via email and indicated she felt the Board had addressed her concerns.

5

On January 22, 2019, Skowronski sent an email to the entire Board expressing his concerns about how the Board was handling Christopher's complaints and his recommendations on how to proceed. Skowronski's email stated:

> Good morning fellow [B]oard members. I did see [McGravey's] most recent response, but in regards to Ms. Christopher's letters . . . This whole situation has weighed heavily on me since our last meeting. And I thought long and hard as to whether I should send my own email in these past few days. Since we received this second communication, I feel compelled to suggest we revisit this, or "re-handle" this, if not only via email as a group. And PLEASE, indicate to me what I may be missing here . . . But I do not feel we really addressed this (and the very specific concerns outlined) adequately. I don't think having Dr. Lynch handle a complaint about Dr. Lynch is how we really want to handle this. Again, PLEASE indicate to me what I may be missing here. May be there is an aspect of this situation I am not understanding or aware of. But the concerns in the communications are serious, and specific. I believe the 4 points are (harassment, safety, communication, and fear of retaliation), but her communication additionally includes the following:
>
> First letter
>
> - Was called out of her classroom
> - Singled out and was called to the office
> - Children dismissed without officers present
> - No officer at entrance of building
> - Dr. Lynch doesn't question them about their jobs

6

- No community member, parent, or employee should be made to feel wrong for questioning the safety
- Email should have been sent informing parents [and] staff we were aware

Second letter:

- Communication as a whole seems to be an underlying problem in our [D]istrict
- Why couldn't an email still go out to alleviate any concerns
- Board thinks its acceptable for the superintendent to not only berate a parent for expressing a concern but to also tell that parent they shouldn't question his authority and for the superintendent to intimidate them at work
- I was under the impression that as a parent and a taxpayer I have a right to ask questions
- I was very uncomfortable writing the first letter
- Fear of retaliation for herself, children, and family
- Putting my faith in the [Board].

Employers are nervous when faced with safety, discrimination, and harassment complaints, and so should we. Such complaints lead to workplace tension, government investigations, and costly legal battles. If the complaint is mishandled, even if unintentionally, we may unwittingly put ourselves and our stakeholders at risk.

If we take the complaint seriously however, we can reduce the likelihood of a lawsuit and even improve employee/parent/guardian relations in the process. I

7

would suggest either "[R]icing"[2] those we need to talk to, not in a "you're in trouble" sort of way, but rather in a due-diligence sort of way. Alternatively, we can look at it as an opportunity to review or discuss best practices in-house. Not in an accusatory manner, but as an exercise in how we must treat these situations, our staff, and to mitigate risk.

We answered Ms. Christopher's original message saying we discussed it as a [B]oard. But I don't know that it would have even happened had I not called the [executive session] . . . , and that both worries and saddens me . . . I feel we have a fiduciary responsibility to address these specific concerns as a group, including Dr. Lynch. Ms. Christopher is correct, changes aren't made by keeping silent and sweeping things under the carpet. This seemed poignant to me in light of the MLK Holiday yesterday.

I attached some best practice suggestions from NOLO[3] to this email if anyone wants to take a look.

I look forward to hearing others' opinions on this as well.

Thank you all!

---

[2] Presumably, the reference to "Ricing" in the email refers to a <u>Rice</u> notice. A <u>Rice</u> notice refers to the right of a public employee to receive notice of the intention of the Board of Education to consider personnel matters related to them. <u>Rice v. Union Cnty. Reg'l High Sch. Bd. of Educ.</u>, 155 N.J. Super. 64, 74 (App. Div. 1977).

[3] NOLO is a free legal website that amalgamates information from various websites, offers resources such as an encyclopedia of legal articles, online forms, software, books, and e-Guides, and connects users to attorneys. <u>About Us</u>, NOLO, https://www.nolo.com/about/about.html (last visited Jan. 9, 2024).

-Mike

Skowronski inadvertently included Christopher—who was not a member of the Board—on his email by hitting "reply all." Another Board member copied on Skowronski's email forwarded it to Dr. Lynch. On February 20, 2019, Dr. Lynch filed a three-count complaint against Skowronski[4] before the School Ethics Commission (Commission) alleging violations of the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21 (count one); violations of the confidentiality of executive sessions, N.J.S.A. 10:4-13 (count two); and violations of the Code of Ethics for School Board members, N.J.S.A. 18A:12-24.1(g).

On June 19, 2019, Skowronski moved to dismiss the three-count complaint in lieu of filing an answer. The Commission granted his motion in part, dismissing counts one and two, leaving the remaining third count: that Skowronski "wrote an email to the entire [B]oard with a copy to a member of the public in which there are negative comments on [D]istrict personnel, specifically the [s]uperintendent," in violation of N.J.S.A. 12-24.1(g).

The Commission held that "[i]f [c]omplainant can additionally prove that certain/specific information in the email message was confidential (e.g. specific issues/matters discussed in executive session that are not (yet) public), and can

---

[4] Lynch v. Skowronski, No. EEC 10213-19, 2020 WL 12175787 (Jan. 25, 2020).

cite to the authority/basis for the confidential nature of that information, [c]omplainant may be able to establish a violation of N.J.S.A. 18A:12-24.1(g)." The matter was referred to the Office of Administrative Law as a contested case.

On March 6, 2019, Skowronski's attorney sent a letter to the Board's attorney and demanded indemnification from the Board for legal fees and costs to defend the allegations in the complaint. The Board's attorney responded that Skowronski's request would be considered at the conclusion of the matter.

On November 20, 2019, the ALJ conducted a one-day hearing. At the hearing, Skowronski testified that the inclusion of Christopher, a non-Board member, on his January 22, 2019 email was an inadvertent mistake, as he only intended to send the email to his fellow Board members. McGravey testified that no confidential information was disclosed in Skowronski's email, however, the opinions expressed in his email "did not reflect the [B]oard's official position." McGravey stated parts of Skowronski's email were "critical of the Board's actions by conveying the impression that the Board did not do enough to address Christopher's concerns."

On February 25, 2020, the ALJ issued an initial decision finding that Skowronski had not violated N.J.S.A. 18A:12-24.1(g), and dismissing the third count of the complaint. The ALJ determined that Skowronski testified

"credibly" that the inclusion of Christopher on his January 22, 2019 email was "an inadvertent mistake." The ALJ noted Christopher's letters were not derived from the closed Board session as Dr. Lynch alleged and "were not confidential or otherwise not previously known to any of the recipients of Skowronski's email." The ALJ found it was "undisputed" that the Board's discussion of Christopher's letters was conducted during an executive session on January 16, 2019, and the Board's deliberations held in executive session are entitled to confidentiality.

However, the ALJ determined "[t]he fact that Christopher's communications were discussed in executive session that evening, by itself, is not confidential information within the purview of N.J.S.A. 18A:12-24.1(g)." The ALJ added that McGravey's email to Christopher on January 19, 2019, updating her on the status of the Board's actions in response to her letters undermined the confidentiality of the information regarding Christopher.

Dr. Lynch filed exceptions to the ALJ's decision, essentially contending the email contained a complaint about him "berating a parent," "intimidating someone at work," at least one Board member felt the Board might be faced with a "harassment" complaint based on his actions, and all of this information was derived from the closed executive session.

On May 19, 2020, the Commission disagreed with the ALJ's initial decision, issued a final decision determining that Skowronski had violated N.J.S.A. 18A:12-24.1(g), and recommended a penalty of reprimand. The Commission determined the information disclosed in Skowronski's email to Christopher was confidential. In addition, the Commission found Skowronski's email contained "new" information that had never been discussed by the Board, such as how the Board was handling or should handle Christopher's concerns and the "potential legal ramifications" for not doing so. Skowronski appealed to the Commissioner.

On December 15, 2020, the Acting Commissioner affirmed the Commission's decision and the recommended penalty. Skowronski filed a motion for reconsideration, which the Acting Commissioner denied. On February 25, 2021, Skowronski's attorney sent another letter to the Board's attorney seeking indemnification since the matter had concluded. On March 22, 2021, the Board's attorney sent a letter to Skowronski's attorney denying the request for indemnification stating Skowronski did not have "approval to disclose the Board's deliberative process" and therefore "did not act in the course of performing his duties as a [B]oard member."

On May 27, 2021, Skowronski filed a petition with the Commissioner seeking to compel the Board to indemnify him for the costs of his defense of the School Ethics charge pursuant to N.J.S.A. 18A:12-20, which requires a Board to indemnify Board members for all costs in defending against civil actions, including ethics complaints. Skowronski alleged he incurred over $38,000 in legal fees and costs in defending the ethics complaint. The Board filed an answer and affirmative defenses asserting Skowronski's petition should be dismissed for failure to state a claim on which relief could be granted. Skowronski moved for partial summary decision, and the Board moved for summary decision under N.J.A.C. 1:1-12.5.

On May 5, 2022, a second ALJ issued an initial summary decision finding that Skowronski was entitled to indemnification by the Board for legal fees and costs he incurred in defending the ethics allegations brought against him by the District superintendent. The ALJ concluded Skowronski's conduct that resulted in the filing of the ethics complaint "arose out of and in the performance of his duties as a member of the Board."

The ALJ found Skowronski sent the email using his Board email account in direct response to an email from the Board's president, regarding a matter pending before the Board. The ALJ highlighted that the Commissioner

13

previously found Skowronski's email was part of the Board's deliberative process. The ALJ concluded that Skowronski was entitled to indemnification under N.J.S.A. 18A:12-20, because his conduct arose out of the performance of his duties as a member of the Board and defending school ethics allegations brought against him by the District superintendent. The ALJ found Skowronski's conduct resulted in "a civil administrative action for violation of the School Ethics Act." The Board filed exceptions to the initial summary decision.

On June 16, 2022, the Acting Commissioner issued a final decision upholding the ALJ's initial summary decision and ordering the Board to reimburse Skowronski for reasonable legal fees and costs in connection with the matter. Relying on Quick v. Bd. of Educ. of Twp. of Old Bridge, Middlesex Cnty., 308 N.J. Super. 338, 342 (App. Div. 1998), the Acting Commissioner noted "the outcome of the action is irrelevant," and N.J.S.A. 18A:12-20, "protects both successful and unsuccessful litigants." The Acting Commissioner found the fact that Skowronski disclosed confidential information did not preclude indemnification. The Acting Commissioner determined the Commission's decision is "supported by sufficient, credible evidence," and

14

Lynch failed to establish that the decision was "arbitrary, capricious, or contrary to law," under N.J.A.C. 6A:4-1.1(a). This appeal followed.

The Board raises two arguments for our consideration:

> (1) the Acting Commissioner erred when she failed to review the time, place, and subject matter of Skowronski's actions; and

> (2) the Acting Commissioner erred when she found Skowronski was entitled to indemnification.

We disagree.

## II.

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). An agency decision will be upheld unless "there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo, 206 N.J. at 27 (quoting In re Herrmann, 193 N.J. 19, 27-28 (2007)). "The burden of demonstrating that the agency's action is arbitrary, capricious, or unreasonable rests upon the party challenging the administrative action." Lavezzi v. State, 219 N.J. 163, 166 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

Our role in reviewing administrative action is limited to three inquires:

>(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
>(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
>(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). If the criteria are met, then a court owes substantial deference to the agency's decision, even if the court would have come to a different decision. In re Herrmann, 192 N.J. at 28. However, reviewing courts are not bound by an agency's interpretation of statute or law. Allstars Auto Grp., 234 N.J. at 158; see Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (finding that, "[a]gencies . . . have no superior ability to resolve purely legal questions, and that a court is not bound by an agency's determination of a legal issue is well established"). Thus, our analysis is guided by these standards.

With the enactment of the School Ethics Act, the Legislature has declared that school board members must conduct themselves to "avoid conduct which is in violation of their public trust or which creates a justifiable impression among the public that such trust is being violated." N.J.S.A. 18A:12-22. The

16

Legislature has further declared that public confidence in school board members is preserved through "specific standards to guide their conduct." Ibid. Those standards include a Code of Ethics for School Board Members, embodied in N.J.S.A. 18A:12-24.1. Subsection (g) provides:

> I will hold confidential all matters pertaining to the schools which, if disclosed, would needlessly injure individuals or the schools. In all other matters, I will provide accurate information and, in concert with my fellow [B]oard members, interpret to the staff the aspirations of the community for its school.

N.J.S.A. 18A:12-20 entitles members of Boards of Education to be indemnified for the cost of defense of a civil or criminal action:

> Whenever a civil , administrative, criminal or quasi-criminal action or other legal proceeding has been or shall be **brought against any person for any act or omission arising out of and in the course of the performance of his [or her] duties as a member of a [B]oard of [E]ducation**, and in the case of a criminal or quasi-criminal action such action results in final disposition in favor of such person, the **[B]oard of [E]ducation shall defray all costs of defending such action**, including reasonable counsel fees and expenses, together with costs of appeal, if any, and shall save harmless and protect such person from any financial loss resulting therefrom.
>
> [(emphasis added).]

And in a civil proceeding, N.J.S.A. 18A:12-20, must be "construed liberally to promote a diversity of views on educational issues and policy and encourage

members of local [B]oards of [E]ducation to express their views freely, without fear of intimidation." Castriotta v. Bd. of Educ. of Twp. of Roxbury, 427 N.J. Super. 592, 602 (App. Div. 2012) (citing Quick, 308 N.J. Super. at 342).

We are satisfied the Acting Commissioner's affirmance of the Commission's decision was not arbitrary, capricious, or unreasonable, and is supported by substantial credible evidence in the record. Consequently, the Board's challenge has no merit. The Acting Commissioner applied the correct legal standard under N.J.S.A. 18A:12-20, entitling Skowronski to indemnification because his actions in sending his subject email arose out of or were in the course of performance of his duties as a Board member.

The Acting Commissioner acknowledged the Commission's finding that Skowronski violated N.J.S.A. 18A:12-24.1(g), for two reasons: (1) his email was pre-decisional; and (2) deliberative in nature. She noted the Board had just received Christopher's email, and the Board had not yet determined how to respond, making it pre-decisional. The Acting Commissioner held Skowronski's email is deliberative in nature because he "expressed concern that mishandling the complaint could put the Board and its stakeholders at risk," recommended the Board issue a "Rice notice," and "opined on the Board's fiduciary responsibilities." Moreover, the Acting Commissioner found these types of

18

"tentative thoughts, suggestions, and questions are part and parcel of the Board's overall deliberative process."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3602-21