NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2764-21

BOARD OF EDUCATION OF
THE BOROUGH OF KINNELON,
MORRIS COUNTY,

      Petitioner-Respondent,

v.

KAREN D'AMICO,

      Respondent-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 9, 2023**
>
> **APPELLATE DIVISION**

Submitted October 3, 2023 – Decided November 9, 2023

Before Judges Whipple, Mayer and Paganelli.

On appeal from the New Jersey Commissioner of Education, Docket No. 43-3/21.

Freeman Law Offices, LLC, attorney for appellant (Hillary D. Freeman, on the briefs).

Antonelli Kantor Rivera, PC, attorney for respondent Board of Education of The Borough of Kinnelon, Morris County (Jarrid H. Kantor, of counsel and on the brief; Gregory D. Emond and Michael A. Sabony, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Commissioner of Education (Joshua P. Bohn, Deputy Attorney General, on the statement in lieu of brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

Karen D'Amico appeals from the final agency decision of the Commissioner of Education (Commissioner), rejecting the initial decision of the Administrative Law Judge (ALJ) and granting the Board of Education (Board) of the Borough of Kinnelon's motion for summary decision, denying D'Amico's cross-motion for summary decision, and removing D'Amico from her position on the Board.

The Commissioner ruled that a ten-day letter filed by a parent of a child in need of special education services constituted a substantial conflict of interest sufficient to remove the parent from her duly elected position on the Board. Our Supreme Court of New Jersey previously addressed circumstances wherein a due process claim that included a request for specific monetary relief was determined to be a substantial conflict between a board member and the board, requiring removal. Bd. of Educ. of City of Sea Isle City v. Kennedy, 196 N.J. 1, 22 (2008). The question we consider here is whether the submission of a ten-day letter raises a similarly substantial conflict of interest. We conclude, based on the record before us, it does not.

The federal Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–09 (IDEA) seeks to "ensure that all children with disabilities have

available to them a free appropriate public education [(FAPE)] that emphasizes special education and related services . . . and to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1). New Jersey's analogous law, N.J.A.C. 6A:14, allows parents to seek tuition reimbursement for a private school placement if they believe the public schools are not providing their child a FAPE. N.J.A.C. 6A:14-2.10(b). To be eligible for reimbursement, before making the placement, parents must give the school district ten business days to correct any deficiencies in the student's educational program. N.J.A.C. 6A:14-2.10(c)(2).

Regarding qualifications for members of boards of education, N.J.S.A. 18A:12-2 states "[n]o member of any board of education shall be interested directly or indirectly in any . . . claim against the board." A later sub-chapter, N.J.S.A. 18A:12-24(j), provides, however, that "[n]othing shall prohibit any school official, or members of his immediate family, from representing himself, or themselves, in negotiations or proceedings concerning his, or their, own interests." The interplay of these two provisions was explored in Kennedy, 196 N.J. 1 (2008). There, the Court acknowledged "that having an inconsistent claim can be additional cause for removal," but questioned "whether removal is the only remedy when a board member has an interest in a

claim against the board." Id. at 15. The Court emphasized that determining how these two statutes should interact in a given case requires a "fact-sensitive [analysis] for substantial and deeply antagonistic interests that would call into question a board member's ability to perform public duties and the public's confidence in that ability of the member to perform his or her office, notwithstanding the advancement of a personal interest through negotiations or a 'proceeding.'" Id. at 17.

Of particular relevance, the Kennedy Court was careful to consider how a board member's interest in their child's right to the due process guaranteed by the IDEA requires that the Court analyzes "how special education controversies and disputes fit between the type of substantial disqualifying interest prohibited by N.J.S.A. 18A:12-2 and the exception provided by N.J.S.A. 18A:12-24(j) for advancing family member interests through proceedings with the board." Id. at 20. The important goals of the IDEA, in combination with its preference for pre-litigation dispute resolution, suggest parents who are advocating for their IDEA-eligible children are especially likely to fit into the N.J.S.A. 18A:12-24(j) exception. "[S]pecial education 'disputes' are unique and deserve special consideration in light of the parties' shared goal" "of an appropriate education for the child." Ibid. "Moreover, it is the policy of this state to encourage less-adversarial means to resolve,

efficiently and quickly, special education disagreements, by encouraging mediation of disputes." Ibid. (citing N.J.A.C. 1:6A–4.1 ("Upon receipt of a hearing request, the Department of Education shall promptly contact the parties to offer mediation.")). The Court announced that "[b]oard members who have handicapped children should not have to fear loss of their elected office as a condition of questioning, or if necessary pursuing through the initiation of proceedings, the appropriateness of their child's education." Id. at 21.

In particular, the Court made clear that not "every due process request to resolve specific issues regarding a child's classification or IEP[1] should result in the automatic disqualification of a board member." Ibid. In cases where the Commissioner is called upon to decide whether a board member should be removed pursuant to N.J.S.A. 18A:12-2's prohibition against inconsistent interests, the Court instructed the Commissioner to consider the "Legislature's exemption allowing participation in certain 'proceedings,'" pursuant to N.J.S.A. 18A:12-24(j). Id. at 17. The Court then "recognize[d] . . . that shall require careful case development." Ibid. So that the Commissioner can provide the public with clear guidance and advice, the Court suggested that

---

[1] "IEP" refers to a student's "Individualized Education Program" which is a written plan that "establish[es] the rationale for the student's educational placement, serve[s] as the basis for program implementation, and compl[ies] with the mandates set forth in this chapter." N.J.A.C. 6A:14-1.3.

"[s]ubstantial, disqualifying conflicts of interest should be identified either by type of claim, i.e. specific monetary claims by the member or a family member as in a tort claim, or by type of proceeding." Id. at 21.

Balancing a respect for the voters' choice of their board of education representatives against a need to protect the integrity of and public's confidence in that same board, the Kennedy Court announced removal was only appropriate when "substantial and deeply antagonistic interests . . . would call into question a board member's ability to perform public duties and the public's confidence in that ability of the member to perform his or her office." Id. at 17. As such, the "Commissioner should examine the nature of the dispute and establish a more careful and fact-specific explanation of when a conflict over a child's educational program becomes so substantial that removal from office is required." Id. at 22. "The Commissioner should review the claim in question to determine whether it portends the likelihood of protracted, and intractable, litigation between the parties." Id. at 21. On the other hand, if "case-specific examination" showed that a particular dispute "could be quickly and easily resolved between the parties," then that conflict would be less likely to involve such substantial and deeply antagonistic interests as to require removal. Id. at 22.

6

Under the facts of Kennedy, the Court found a due process request that included a demand for "specific monetary relief" could be considered "a substantial conflict between a board member and the board." Id. at 22. The Court specifically did not mandate, however, all claims mentioning financial remedies automatically equate to interests inconsistent with sitting on a board of education. Id. at 22 n.7 ("We leave open the possibility that the Commissioner may view differently claims involving de minimis amounts in controversy."). Thus, a full examination of all circumstances surrounding the dispute between the board member and the board is necessary to balance the member's individual rights as a parent with the needs of the board to maintain integrity.

Through that lens we address the case at hand. D'Amico and her husband are parents of two children in the Kinnelon School system. Beginning in November 2018, the D'Amicos filed a total of four ten-day letters pertaining to one of their children who was enrolled in a private school to address special needs. Only three of the letters are included in the record:[2]

---

[2] The Commissioner and ALJ did not base their decisions on any of these three letters. The ALJ's Initial Decisions from October 19, 2021, and February 18, 2022, and the Acting Commissioner's Final Decisions from December 2, 2021, and April 1, 2022, instead focused on a ten-day letter filed on August 13, 2021, a full four months after the Board filed their initial verified petition. This letter addressed the child's unilateral placement for the 2021-22 school year but is not included in the record.

November 2, 2018, regarding the child's unilateral placement for the 2018-19 school year.

June 25, 2019, regarding the child's unilateral placement for the 2019-20 school year.

July 7, 2020, regarding the child's unilateral placement for the 2020-21 school year.

The D'Amicos submitted a due process request on August 7, 2019, to pursue tuition reimbursement, among other things, relating to the 2018-19 and 2019-20 school years. Just prior to the beginning of that hearing, they filed another due process request on September 1, 2020, regarding tuition reimbursement for the 2020-21 school year and sought to consolidate the issues in that request with those included in their initial request. After their motion to consolidate was rejected, the D'Amicos withdrew the September 1, 2020 due process request, with the intent to refile. After two days of the requested due process hearing were held, the D'Amicos withdrew the August 7, 2019 due process request with prejudice, subsequent to the ALJ's Letter Order dated November 17, 2020.

In January 2021, D'Amico was sworn in as a member of the Board. On February 1, 2021, D'Amico's husband re-filed the due process petition seeking tuition reimbursement for the 2020-21 school year. D'Amico withdrew the petition within an hour after her husband filed it.

In April 2021, the Board filed an amended verified petition with the Commissioner asking for a declaratory ruling that D'Amico was disqualified from serving on the Board because she had a direct or indirect interest in a substantial financial claim against it; the Board also moved for a summary decision against D'Amico. The Commissioner denied the Board's request for a declaratory ruling and transmitted the matter (including the Board's pending motion) to the Office of Administrative Law (OAL). D'Amico cross-moved for summary decision in July 2021. While her cross-motion was pending, on August 13, 2021, D'Amico sent a ten-day letter, notifying the Board of her intent to unilaterally place her child in a private school for the 2021-22 school year and reserving the right to seek reimbursement for the costs of the placement.

On October 19, 2021, the ALJ issued an initial decision in D'Amico's favor, granting her cross-motion and denying the Board's motion and request for a declaratory ruling. The ALJ found, although D'Amico violated N.J.S.A. 18A:12-2 when her husband filed the due process petition while she was serving as a Board member, she remedied the violation by withdrawing it one hour after it was filed. The ALJ also ruled, as no due process petition was filed relative to D'Amico's August 13, 2021 ten-day letter, the letter did not

A-2764-21

violate N.J.S.A. 18A:12-2; it merely served as notice relating to reimbursement and was not a claim for reimbursement.

The Board filed exceptions, and the Commissioner issued a decision on December 2, 2021, adopting the ALJ's decision with respect to D'Amico's due process petition, but remanding for further proceedings on the issue of the ten-day letter. Although the Commissioner agreed with the ALJ's conclusion that D'Amico remedied a violation of N.J.S.A. 18A:12-2 by withdrawing her due process petition one hour after her husband had filed it, the Commissioner disagreed with the premise that the ten-day letter was not a claim against the Board.

The Commissioner compared the circumstances here to those in which New Jersey laws require a notice of tort claim be filed prior to the initiation of legal action against a public entity, N.J.S.A. 59:8-8; such a notice of tort claim constitutes a conflicting claim, Kennedy, 196 N.J. at 15 (citing Bd. of Educ. of Borough of Hawthorne v. Taliaferro, 94 N.J.A.R.2d (EDU) 197). Because New Jersey law similarly requires parents to send a ten-day letter prior to seeking reimbursement from a board of education for unilateral placement of their child in private school, N.J.A.C. 6A:14-2.10, the Commissioner found "[b]y sending the letter, [D'Amico] has asserted a claim against the Board that has the potential to disqualify her from serving as a Board member."

However, because the Commissioner was unable to determine from the record whether a substantial conflict existed at that time between the parties, citing to Kennedy, the Commissioner remanded the matter to the OAL for further fact-finding on whether there was a resolution of the August 13, 2021 ten-day letter issue.

Upon the remand, the parties stipulated that D'Amico unilaterally placed her child in a private school for the 2021-22 school year. The ALJ issued an initial decision reaffirming the original initial decision and stating that her "decision on the merits remains unchanged." Although D'Amico unilaterally placed her child in a private school, the ALJ still held the ten-day letter was not, and could not, serve as a claim against the Board; it was different from a notice of tort claim; and, thus, it did not violate N.J.S.A. 18A:12-2.

The ALJ stated a ten-day letter served as a "notice of concerns or intent to enroll in a private school to avoid reduction or denial of reimbursement for the private school in the event a due process petition alleging a denial of a FAPE is ever filed . . . ." The ALJ concluded, in contrast, a notice of tort claim constitutes a "claim" because it includes the specifics of the transaction giving rise to the claim, a description of the injury, and the damage or loss incurred, as well as the amount claimed; further, the failure to file one completely bars the potential tort claimant from filing a lawsuit.

The Board once again filed exceptions, and, on April 1, 2022, the Commissioner issued a final decision rejecting the ALJ's conclusion that the ten-day letter did not constitute a claim against the Board. Although a notice of tort claim has some more specific requirements than a ten-day letter, the Commissioner "[did] not find this distinction consequential." Rather, she reasoned, "[i]n both documents, one party is alerting another to the existence of a claim and fulfilling legal requirements necessary as a precondition to filing a formal action to pursue that claim." She continued, "[a] [ten]-day letter, just like a Notice of Tort claim, is a claim that is subject to settlement and may be the subject of a future court action."

Relying on Kennedy, the Commissioner recognized that a board member should not be removed from office merely because she advanced a claim against the board involving her or her immediate family member's interest. See 196 N.J. at 17-18. Kennedy did instruct, however, that "the Commissioner . . . examine the nature of the dispute to determine 'when a conflict over a child's educational program becomes so substantial that removal from office is required.'" Id. at 22.

Applying that instruction, the Commissioner noted D'Amico's ten-day letter indicated she would unilaterally place her child in private school, and she followed through with that placement. Moreover, the letter reflected a

12

specific intent to seek reimbursement for the costs of the placement; D'Amico has never waived nor executed a release for such reimbursement.

The Commissioner, therefore, concluded D'Amico has a claim for monetary relief against the Board that precludes her continued service as a board member. The Commissioner granted the Board's motion for summary decision and denied D'Amico's cross-motion, thereby removing D'Amico from the Board.

This appeal followed.

D'Amico argues on appeal the Commissioner's decision "would preclude any parent of a child entitled to special education from serving on the [Board] at any time," and such a blanket prohibition is a substantive violation of the IDEA. She contends the Commissioner's decision "significantly impedes a parent's opportunity to participate in the decision-making process regarding the provision of an appropriate education," as is guaranteed by the IDEA. Instead, D'Amico asserts the "inchoate rights to enforce the statute" that such parents possess instead qualify as disputes "concerning a child's education program" that should not "require a sitting board of education member's removal from office." See Kennedy, 196 N.J. at 8.

D'Amico further argues the Commissioner erred in deciding that D'Amico's ten-day letter was a "substantial, disqualifying conflict of interest"

because the Commissioner "failed to engage in [the] fact-specific inquiry" required by Kennedy. D'Amico asserts the holding in Kennedy mandates that a "due process request" is necessary to trigger the "extreme sanction of removal from the Board." Instead, D'Amico argues her ten-day letter is simply "a reservation of rights to assert a claim, potentially, at some point in the future."

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007). While "[c]ourts afford an agency 'great deference' in reviewing [the agency's] 'interpretation of statutes within its scope of authority,'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't. of Agric., 196 N.J. 366, 385 (2008)), "when an agency's decision is based on the 'agency's interpretation of a statute or its determination of a strictly legal issue,' we are not bound by the agency's interpretation," In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (quoting Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J.

369, 380 (2014)).  This appeal presents a purely legal question that requires us to interpret N.J.S.A. 18A:12-2 and N.J.S.A. 18A:12-24(j).  Our review, therefore, is de novo.  See, e.g., Castriotta v. Bd. of Educ. of Twp. of Roxbury, 427 N.J. Super. 592, 600 (2012) (noting that when "the core question is one of statutory construction" we do not defer to the agency's interpretation).

"Our primary goal in interpreting a statute 'is to discern and effectuate the intent of the Legislature.'"  Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38 (2020) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)).  We "first consider[] 'the statute's plain language, ascribing to the words used their ordinary meaning and significance.'"  Ibid. (quoting Murray, 210 N.J. at 592).  "If the plain language leads to a clear and unambiguous result, then [the] interpretative process is over."  Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)).

In the School Ethics Act, N.J.S.A. 18A:12-21 to -34, "the Legislature declared its intention 'to ensure and preserve public confidence' in local school board members . . . by providing local board members with advance guidance on ethical conduct so that such members might conduct their personal affairs appropriately and within the bounds ethically expected."  Kennedy, 196 N.J. at 16.  Accordingly, N.J.S.A. 18A:12-24(a) to - 24(g) list seven specific

15

prohibitions applicable to all school officials, including members of boards of education. Nonetheless, N.J.S.A. 18A:12-24(j) provides that "[n]othing shall prohibit any school official, or members of his immediate family, from representing himself, or themselves, in negotiations or proceedings concerning his, or their, own interests."

Under this provision, determining whether D'Amico's removal from the Board is appropriate requires a case-specific analysis of the circumstances surrounding her purported dispute with the Board. We must consider whether the underlying facts represent "substantial and deeply antagonistic interests," id. at 17, and "portend[] the likelihood of protracted, and intractable, litigation between the parties," id. at 21.

The only potential dispute here arises from the ten-day letter filed on August 13, 2021. We first must address what a ten-day letter is and what it is not.

The ten-day letter arises in the portion of New Jersey's Administrative Code that pertains to Special Education, N.J.A.C. 6A:14, which aims to, among other things, "[e]nsure that all students with disabilities . . . have available to them a free, appropriate public education [(FAPE)], [and] . . . [e]nsure the provision of special education and related services." N.J.A.C. 6A:14-1.1(b)(1) & (6). N.J.A.C. 6A:14-2.10 provides the right of parents to

16                                                                    A-2764-21

unilaterally "enroll their child in a nonpublic school at public expense" if the district board of education "had not made a free appropriate public education available to the student in a timely manner prior to enrollment" and if "the private placement is appropriate." N.J.A.C. 6A:14-2.10(b)–(c).

To seek full tuition reimbursement for such a unilateral nonpublic placement, "at least [ten] business days (including any holidays that occur on a business day) prior to the removal of the student from the public school," the parents must "give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school." N.J.A.C. 6A:14-2.10(c). This written notice is commonly referred to as a "ten-day letter."

The ten-day letter serves to notify the district board of education of the parents' "concerns or intent," ibid., such that the board has an opportunity to correct deficiencies in the child's educational program prior to the child's removal from public school. There are no prescribed content requirements for this letter, aside from the parents' "concerns or intent to enroll their child in a nonpublic school." Ibid. Notably, the regulation does not require the ten-day letter to include notice to the board that the parents intend to seek tuition reimbursement.[3]

---

[3] Federal regulations do require that parents give notice of intent to seek public payment for their child's education: the parents must "give written notice to the

The regulation does, however, allow a family's tuition reimbursement to be reduced or denied if the parents neglect to file a ten-day letter, thereby failing to give the board a final opportunity to cure shortcomings in the child's education plan. Other conditions that may lead to reduced or denied reimbursement are:

> 1. If, at the most recent IEP meeting that the parents attended prior to the removal of the student from the public school, the parents did not inform the IEP team that they were rejecting the IEP proposed by the district board of education;
>
>     . . . .
>
> 3. If, prior to the parents' removal of the student from the public school, the district board of education proposed a reevaluation of the student and provided notice pursuant to N.J.A.C. 6A:14-2.3(g) and (h), but the parents did not make the student available for the reevaluation; or
>
> 4. Upon a judicial finding of unreasonableness with respect to actions taken by the parents.
>
> [N.J.A.C. 6A:14-2.10(c).]

Each of the above conditions that trigger the potential for reduction or denial of tuition reimbursement relates to good faith efforts, on the parts of both the parents and the district board of education, to provide "students with

_____

public agency" of "their concerns and their intent to enroll their child in a private school at public expense." 34 CFR § 300.148(d)(1).

 A-2764-21

disabilities [with] . . . a free, appropriate public education." See N.J.A.C. 6A:14-1.1(b)(1).

To request tuition reimbursement from a board of education, parents must also request a due process hearing, which is "an administrative hearing conducted by an administrative law judge." N.J.A.C. 6A:14-2.7(a). A request for a due process hearing "shall be filed within two years of the date the party knew, or should have known, about the alleged action that forms the basis for the due process petition." N.J.A.C. 6A:14-2.7(a)(1). This two-year limitation period may be extended at the discretion of an administrative law judge, under limited circumstances of misconduct by the board of education. Ibid. The written request for the due process hearing must include the following information: "the student's name, student's address, the student's date of birth, . . . the name of the school the student is attending, . . . the specific issues in dispute, relevant facts, and the relief sought and, in the case of a homeless child, available contact information for the child . . . ." N.J.A.C. 6A:14-2.7(c) (emphasis added).

A request for a due process hearing triggers the need for a written response from the board of education, "specifically addressing the issue(s) raised in the request for a due process hearing." N.J.A.C. 6A:14-2.7(d). "A request for a due process hearing . . . serves as notice to the [board of

education] of the issues in the due process complaint." N.J.A.C. 6A:14-2.7(f). Following this request, the issues in the due process complaint may be resolved between the parties, prior to proceeding to a full due process hearing. N.J.A.C. 6A:14-2.7(h).

In comparison, the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, limits the liability of public entities and public employees in New Jersey for tort claims made against them, except under strictly prescribed circumstances. To file suit against a public entity or public employee "relating to a cause of action for death or for injury or damage to person or to property," a claimant must file a notice of claim "not later than the [ninetieth] day after accrual of the cause of action." N.J.S.A. 59:8-8. If this notice of claim is filed after ninety days, but before one year has passed since accrual of the claim, it is within the discretion of a Superior Court judge to decide whether the notice of claim will be accepted. N.J.S.A. 59:8-9. Such an exception will only be permitted absent substantial prejudice against the public entity or employee. Ibid.

Thus, the notice of tort claim requirement shortens to ninety days the window a claimant has to provide a defendant with the specific information required to file suit, including:

    a. The name and post office address of the claimant;

20

b.   The post-office address to which the person presenting the claim desires notices to be sent;

c.   The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

d.   A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

e.   The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

f.   <u>The amount claimed as of the date of presentation of the claim</u>, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

[N.J.S.A. 59:8-4 (emphasis added).]

"After the expiration of six months from the date notice of claim is received," the claimant is then permitted to file their suit in "an appropriate court of law." N.J.S.A. 59:8-8.

The notice of claim is a procedural pre-requisite to filing a tort suit against a public entity.  It serves no purpose other than to notify the public entity or public employee that the claimant intends to file suit.  If this notice of claim is not submitted, a claimant "shall be forever barred from recovering against a public entity or public employee."  <u>Ibid.</u>  Such a claim is likewise

21

barred if "two years have elapsed since the accrual of the claim," or a settlement was reached on the claim. N.J.S.A. 59:8-8(b)–(c).

In our view, a due process request and a notice of tort claim do serve similar functions of notifying the opposing party of the issues to be addressed as well as the relief sought by the claimant. Once the issues and requested remedies are clear between the parties, a conflict may be settled through mediation or a similar non-litigious intervention. The ten-day letter, on the other hand, only notifies the district board of education of the parents' concerns with their child's education plan. The settlement that may occur after a ten-day letter, the reason for the ten-day letter, is the proposal by the board— and acceptance by the parents—of an adequate education plan to provide the child with a free, appropriate public education. The ten-day letter is not required to include any remedy sought other than a FAPE.

The ten-day requirement affords the board of education the opportunity to address the parents' concerns before the parents take unilateral action. The time limit associated with a ten-day letter specifically delays the parents' opportunity to take action. The time limit associated with a Notice of Tort Claim, on the other hand, shortens to ninety days the window of opportunity that a claimant has in which to take action. Further, a ten-day letter portends the mere possibility of future legal action; it does little to indicate the

22

likelihood of protracted and intractable litigation between the parties. We reject a broad rule that a ten-day letter is similar to a notice of tort claim and establishes a per se incompatible interest.

Here, specifically, the ten-day letters in the record all include a statement indicating that the D'Amicos "will seek reimbursement from the District for all costs associated with this placement," (Nov. 2, 2018, Letter) (emphasis added), or "will seek reimbursement from the District for all costs associated with [the child's] placement including transportation," (June 25, 2019, and July 7, 2020, Letters (emphasis added)). The record does not include the ten-day letter dated August 13, 2021.

The text of these earlier letters does not assert a "request for specific monetary relief." No specific amount of requested reimbursement is provided; no demand for payment is made. The language in those letters only alerts the Board that, since a resolution with regard to the child's education plan has not been reached, the D'Amicos intend to seek reimbursement in the future. This is not an open-ended intention, nor is it a definite request. The D'Amicos cannot seek reimbursement without requesting a due process hearing and are limited to seeking this remedy only within a two-year window from when they removed their child from public school and unilaterally placed the child in a nonpublic school. See N.J.A.C. 6A:14-2.7(a)(1).

In arguing this ten-day letter "portends the likelihood of protracted, and intractable, litigation between the parties," see Kennedy, 196 N.J. at 21, the Board points to D'Amico's history of filing three ten-day letters[4], filing three due process requests, and threatening to file a notice of tort claim. The record demonstrates, however, the D'Amico's only had one partial due process hearing, abandoned some of their earlier "claims," and never filed a notice of tort claim. Not only does this past behavior show a likelihood of litigation avoidance, but also the Commissioner found these arguments irrelevant, stating that "[w]hether a conflict between a board member and a board is substantial enough to warrant removal must be considered on a case-by-case basis, with an analysis of the dispute at issue at the time."

Moreover, absent from this record is evidence of substantial and deeply antagonistic interests that portend the likelihood of protracted and intractable litigation between the parties. Indeed, although the D'Amicos have put the Board on notice that they retain an intention to seek reimbursement for their child's private school costs, they have done little else to follow through with that intent.

In the event the D'Amicos filed a timely due process request for tuition reimbursement, we conclude, as the Supreme Court did in Kennedy, that a line

---

[4] November 2, 2018; June 25, 2019; August 13, 2021. The Board's list did not include the ten-day letter filed on July 7, 2020.

would be crossed requiring disqualification from the Board.   Under the circumstances on this record, though, that line has not yet been reached.

Reversed and remanded, consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25                                                                 A-2764-21